# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) | |
| Plaintiff, ) | Case No. 4:12-cv-00563 |
| ) v. ) ) | Hon. Keith P. Ellison |
| MARK A. JACKSON and ) JAMES J. RUEHLEN, ) ) | |
| Defendants. ) ) | |

## SEC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINION TESTIMONY OF ALAN BELL

Defendant James Ruehlen ("Ruehlen") contends that his proposed accounting expert, Alan Bell ("Bell"), should be permitted to instruct the jury on the "facts"—as he sees them—and instruct the jury on what result to reach on each of the SEC's claims. Ruehlen is wrong on both counts. As the numerous cases cited in the SEC's opening brief demonstrate—cases Ruehlen largely ignores—Rule 702 does not permit an expert to tell the jury what result to reach or to serve as a mouthpiece of percipient witnesses and the defense.

The remainder of Ruehlen's opposition is spent attempting to rehabilitate Bell (largely by ignoring both the content of Bell's report and his deposition testimony) and recasting his opinions as providing helpful instruction on the meaning and purpose of internal controls. But none of Bell's opinions can be fairly characterized in this manner. To the extent Bell could offer any opinions on "how the accounting function operates in a public company" or the importance of internal controls, such opinions cannot be found in his report.

For these reasons, and the reasons stated in the SEC's opening brief, the SEC respectfully requests that the Court enter an order precluding Ruehlen from introducing Bell's testimony at trial.

## I. Bell May Not Instruct the Jury What Verdict to Reach on the SEC's Claims.

As the SEC demonstrated in its opening brief, Bell intends to opine that Ruehlen "appropriately fulfilled his responsibilities" and "reasonably rel[ied] upon his superiors" to approve payment of bribes to Nigerian government officials. (*See* Dkt. No. 135 at 16-18, 20-21.) In other words, Bell intends to opine that Ruehlen did not act corruptly when he authorized payments ranging from $12,000 to $56,000 to Nigerian officials; and, Ruehlen concedes as

1

much.[1]  (*See* Br. at 9 (stating that Bell's testimony relates to "the issue of [Ruehlen's] intent").)

But it is for the jury to decide whether Ruehlen acted "appropriately" or corruptly and expert testimony on the ultimate issue of Ruehlen's state of mind is plainly inadmissible.  *See Salas v. Carpenter* 980 F.2d 299, 305 (5th Cir. 1992) (expert's "assertions regarding [defendant's] state of mind would not be helpful to a jury," and "were not admissible"); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Rule 704 ... does not open the door to all opinions. ... [Q]uestions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions.")[2]

For the same reason, Bell's opinion that Ruehlen did not "circumvent" Noble's internal controls is inadmissible.  (*See* Dkt. No. 135 at 18-19.)  Bell, in fact, makes no effort to hide that he intends to tell the jury what result to reach on the SEC's internal control claims:  Bell "reviewed and summarized the requirements for maintaining books and records in accordance with relevant accounting standards and the Securities and Exchange Act of 1934, §13(b)(2)"; determined (in his view) the relevant "facts"; and, ultimately concluded Ruehlen did not "circumvent[]" Noble's system of internal accounting controls in violation of the securities laws.  (Bell Rpt. [Dkt. No. 135-1] ¶¶ 4, 37-69.)  "While an expert may provide an opinion to help a jury

---

[1] Ruehlen oddly states that the "SEC does not (and cannot) contend" that Bell's opinions in this regard are "irrelevant or the product of an unreliable methodology."  (Br. at 12.)  However, as the SEC plainly laid out in its opening brief, Bell's opinions are speculative, unreliable and unhelpful, *i.e.*, irrelevant.  (*See* Dkt. No. 137 at 20-21.)  Ruehlen's statement to the contrary is—like much of his opposition brief—entirely divorced from the grounds for exclusion of Bell's testimony asserted in the SEC's motion.  Similarly, Ruehlen's assertion that Bell does not intend to opine that Ruehlen "relied" upon his superiors is divorced from Bell's own testimony.  (Br. at 13 n. 7.)  Bell testified that it is his opinion that Ruehlen did in fact rely upon his superiors' best judgment in approving TIP payments.  (*See* Bell Dep. [Dkt. No. 135-2] at 144; *see also id*. at 13.)

[2] Ruehlen cites this Court's order on Defendants' motions to dismiss and *United States v. Liebo*, 923 F.2d 1308 (9th Cir. 1991), for the proposition that expert testimony concerning "fulfillment of one's responsibilities under a system of internal controls" is "certainly relevant to the issue of intent."  (Br. at 9.)  But neither the Court's prior order nor *Liebo* stands for this proposition.  Rather, the Court's order and *Liebo* are clear that a jury may consider "whether Jackson's approval of the payments negates corrupt intent."  Dkt. No. 87 at 39; *Liebo*, 923 F.2d at 1313.  While the jury may consider Ruehlen's testimony that he obtained CFO approval for the payments to Nigerian government officials in assessing his intent, expert testimony merely bolstering Ruehlen's testimony is improper.

... understand a particular fact, 'he may not [as here] give testimony stating ultimate legal conclusions based on those facts.'" *In re Initial Pub. Offering Secs. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (an expert's legal conclusion "both invades the court's province and is irrelevant."); *J.S. v. Am. Institute for Foreign Study, Inc.*, Civil Action No. SA-12-CA-1036-XR, 2013 WL 5372531, at *9 (W.D. Tex. Sep. 24, 2013) ("The Court agrees that the jury is capable of reading Camp America's policies and determining from the evidence whether Camp America complied with them, and that this testimony would not assist the jury."); *Oatis v. Diamond Offshore Mgmt. Co.*, No. 09-3267, 2010 WL 936449, at *2 (E.D. La. Mar. 12, 2010) (excluding expert testimony because the jury was capable of understanding and determining whether the defendant employer's safety policies were violated).[3]

Because "Bell is merely giving the jury his view of how its verdict should read" his opinions are inadmissible. *Texas Peace Officers v. City of Dallas*, 58 F.3d 635, 635 (5th Cir. 1995).

## II. Bell May Not Narrate the "Facts" or Serve as a Mouthpiece of Witnesses and the Defense.

As the SEC demonstrated in its opening brief, "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005); *see also In re Air*

---

[3] Ruehlen's claim that Bell's testimony "is materially the same opinion that was admitted in" *SEC v. Daifotis*, No. C 11-00137, 2012 WL 2051193 (N.D. Cal. Jun. 7, 2012), Br. at 13, cannot be reconciled with that court's opinion or the opinions Bell intends to offer in this case. In *Daifotis*, the court held the "expert ***will not be permitted to testify*** and render findings on the issue of whether Schwab's actual conduct was in compliance with industry standards," "summarize fact witness deposition testimony," "vouch for one side's fact scenario and purport to tell the jury what actually occurred," or testify that the defendant "'reasonably relied' on Schwab's process[es]." *Id*. at *4-*5 (emphasis added). Indeed, the court lamented that the proffered testimony was an "all-too-common misuse of retained forensic expert witnesses, namely the tactic of presenting an expert who purports to have investigated the facts and proposes to tell the jury what actually occurred in the case at hand." *Id*. at *1. Even a cursory review of Bell's report reveals that is precisely what Bell intends to do here.

*Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir. 1986). Yet, Ruehlen offers Bell to do just that: Bell intends to opine on, among other things, what Ruehlen did to obtain TIPs and the information concerning TIPs that Ruehlen had available; what Ruehlen's responsibilities allegedly were with respect to TIPs; who Ruehlen consulted about the TIP transactions at issue in this case and what he was told; and, what Ruehlen told others. (Bell Rpt. [Dkt. No. 135-1] ¶¶ 48-69.) He also intends to opine on what various other percipient witnesses did, what they knew, and what their responsibilities allegedly were. (*Id.* ¶¶ 23-26, 36-47, 74-82, 86-87, 90-96.) Simply put, Bell serves as the "mouthpiece" for witnesses and the Defendants' trial themes.

Ruehlen now contends that these "opinions" are in fact the "basis and reasons for" Bell's opinions (on the ultimate issues) that are required to be disclosed under Rule 26. (Br. at 14.) But an expert may not, as Ruehlen suggests, serve as "the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (quoting *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005)). Rule 702 "was never intended to allow oblique evasions of the hearsay rule," *id.*, let alone the wholesale abolition of the rule as Ruehlen and Bell suggest is permitted here.[4]

Nor is Bell merely basing his "opinions" on certain "factual assumptions" as Ruehlen

---

[4] Notably, Ruehlen makes no effort to distinguish or explain away the substantial case law cited in the SEC's brief demonstrating that Bell's attempt to instruct the jury on the facts is impermissible. (*See* Dkt. No. 135 at 12-14.) *See also United States v. Tucker*, 345 F.3d 320, 330 (5th Cir. 2003) (affirming exclusion of proffered expert testimony that was based on expert's "understanding from the facts that [defendant] believed, and relied upon, advice from counsel and others that the trust certificates involved were not securities"); *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612–614 (7th Cir. 2002) (expert not allowed to be "mouthpiece" of another person); *Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, No. 07 Civ. 6611(RJH), 2011 WL 3586468, at *2 (S.D.N.Y. Aug. 12, 2011) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702."); *LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08 Civ. 8426(WHP)(HBP), 2012 WL 466785, at *7 (S.D.N.Y. 2012) ("[A]n expert witness may not offer testimony which merely rehashes the testimony of percipient witnesses.").

contends. (Br. at 14.) Bell does not contend that he assumed certain facts in forming his opinions. He testified that his summation of the "facts"—as he sees them—was helpful because it "put[s] everything in one place." (Bell Dep. [Dkt. No. 135-2] at 120; *see also id*. at 119, 121.) And Bell's "opinions" are inseparable from the testimony of percipient witnesses he intends to selectively summarize for the jury. For example, Bell opines that Ruehlen was not "responsible for recording TIP payments" in Noble's books and records. (Bell Rep. [Dkt. No. 135-1] ¶ 19.) Instead, Bell contends that the "Division Controller," Alan Middleton, was responsible. (*Id*.) Bell's "opinion," however, is simply the repetition of select portions of Ruehlen's and Mr. Middleton's testimony.[5] (*See id*. ¶¶ 74-82; Bell Dep. [Dkt. No. 135-2] at 237-38.)

Similarly, Bell's opinion that Ruehlen "fulfilled his responsibilities" under Noble's system of controls is based on his factual conclusion that "Ruehlen also sought and received specific approval for the use of the paper process"; specifically, "Mr. Rose, [Ruehlen's] direct supervisor, ... approved the use of the paper process." (Bell Rpt. [Dkt. No. 125-1] ¶ 59, 63.) This "opinion" is also based solely on Ruehlen's testimony. It is also directly contradicted by the testimony of Mr. Rose. (*See* Rose Dep. [Dkt. No. 135-4] at 46-47.)[6] Bell's fact-finding and opinions are thus one and the same.

---

[5] The only case Ruehlen cites as support, *Richman v. Sheahan*, 415 F. Supp. 2d 929 (N.D. Ill. 2006), is inapposite. There, the Magistrate Judge concluded experts in an excessive force case could assume certain facts as true in opining whether officers used reasonable force in restraining the plaintiff. *Id*. at 942. The court noted that "[t]here is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions ... The former is manifestly improper, the latter is not." *Id*. Bell, however, intends to testify to disputed facts and offer testimony to bolster Ruehlen's view of the evidence, precisely the type of testimony *Richman* confirms is improper.

[6] Incredibly, Ruehlen claims Rose was "speculating" when he testified categorically that he did not authorize Ruehlen to lie to Nigerian government officials to procure TIPs. (Br. at 18; *see also* Dkt. No. 135-4.) Ruehlen also contends that Bell's resolution of this factual dispute in Ruehlen's favor is of no consequence because Bell did not "consider weighing" Rose's testimony. (Br. at 17-19.) But whether Bell "weigh[ed]" Rose's testimony is not the point. Bell intends to testify to only helpful testimony of percipient witnesses—that is the essence of impermissible factual narrative testimony and invades the province of the jury. *See*, *e.g*., *SEC v. Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013) (an expert "may not invade the province of the jury by 'finding facts' that are in contention in this case.").

5

Bell's one-sided factual narrative concerning what various percipient witnesses (including Ruehlen) did, said, knew, or what their responsibilities allegedly were is improper under Rule 702 and will not aid the jury in any respect. Ruehlen should therefore be precluded from introducing Bell's factual findings at trial. (*See* Bell Rpt. [Dkt. No. 125-1] ¶¶ 23-26, 36-69, 74-82, 90-96.) *See*, *e.g.*, *Jones v. H.W.C. Ltd.*, No. 01-3818, 2003 WL 42146, at *3 (E.D. La. Jan. 3, 2003) (excluding expert opinions that "consist[ed] of conclusions and one sided recitations of disputed facts"); *SEC v. Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013) (precluding expert from testifying defendant "was 'primarily responsible' for the AC1 transaction. There are percipient witnesses who can describe roles and responsibilities in issue.").

## III.  Bell's Opinions Are Not Reliable.

Much of Ruehlen's opposition is spent attempting to rehabilitate Bell and recast his opinions as reliable testimony grounded in "generally accepted accounting principles" and the "Internal Control – Integrated Framework published by the Committee of Sponsoring Organizations ("COSO") of the Treadway Commission." (Br. at 2, 4-6; *also* at 6, 11-13.) But no amount of lip service to accounting principles or control standards can render Bell's testimony reliable.

As Bell testified, he "used [his] judgment" to determine what were the right "facts" to reach his conclusions that Ruehlen acted appropriately and did not circumvent Noble's internal

controls.[7]  (Bell Dep. [Dkt. No. 135-2] at 75.)  Bell testified that he also relied on his "judgment" that Ruehlen "wasn't hiding anything" and was providing "appropriate information" to senior management.  (*See id*. at 115-16.)  Bell conceded that his opinions are subjective and based solely on his "experience."  (*Id*. at 77 ("**There's no standard.  It's based on my experience**.")) (emphasis added); *see also id*. at 116.)  Moreover, the select documents and transcripts on which he bases his opinions were screened and fed to him by defense counsel and an outside consulting firm retained by Ruehlen.  (*See id*. at 41, 43-45, 47.)  Bell thus isn't explaining or applying any accounting or "internal control" standard, he is just applying his own (and Ruehlen's counsel's) "judgment" to engage in naked fact-finding.

Similarly, Bell's opinion that Ruehlen "could [and did] reasonably rely" upon his superiors is also based on only Bell's say so.  When asked why Ruehlen could "reasonably rely" on his superiors and the feedback Ruehlen received from others, Bell testified: "**That's the way a company works**."  (*Id*. at 136 (emphasis added).)  Similarly, when asked the basis for his opinion that Ruehlen did in fact rely upon his superiors in approving TIP payments, Bell testified that Ruehlen's "position in the company" permitted him to rely on his superiors.  (*Id*. at 144.)

But testimony "that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).  Nor does it "suffice for an expert to say, in effect, 'I have 30 years [of] experience in the field. So trust me, the answer is X.'" *Threet v. Correctional Health Care Mgmt. of Okla., Inc*., No. CIV-07-0943-HE, 2009 WL 3335596, at *5 (W.D. Okla. Oct. 15,

---

[7] As demonstrated in the SEC's opening brief, Bell's opinion that Ruehlen did not circumvent Noble's internal controls is not reliable for the simple reason that he ignores the very control at issue in this case—the control requiring him to obtain CFO approval before authorizing payments to government officials. (*See* Dkt. No. 135 at 7-8, 19.)  Ruehlen contends, without citation, that Bell "analyz[ed] authoritative accounting and internal control guidance" and concluded Ruehlen's failure to obtain prior CFO approval was "consistent with 'inherent limitations' in every system of accounting controls."  (Br. at 10.)  What this actually means is not clear.  But it is clear that Bell understood that Noble's policy required Ruehlen to obtain prior CFO approval, understood that Ruehlen often failed to obtain the required pre-approval, and nevertheless concluded that the policy requiring Ruehlen to obtain prior CFO approval for payments to government officials was ***not*** circumvented.

7

2009). Yet that is what Bell does here: he applies his own subjective judgment based on his "experience" and concludes Ruehlen did nothing wrong. That is not proper expert testimony.

### IV. Bell's "Rebuttal Opinions" Are Anything But Rebuttal.

Ruehlen contends that Bell's opinions concerning the purported delays in oil production and lost revenue associated with exporting and re-importing drilling rigs to secure TIPs, Bell Rpt. [Dkt. No. 125-1] ¶¶ 22, 97-107, and 111-12, are offered to rebut the testimony of the SEC's industry expert, Wayne Kelly. (Br. at 22.) Not true. Only five paragraphs within Bell's 112-paragraph report address Mr. Kelly's opinions and none of these paragraphs concern Bell's opinions regarding purported delays in oil production and lost revenue associated with exporting and re-importing drilling rigs to secure TIPs. Simply put, Bell's purported "rebuttal opinions" have nothing to do with the opinions offered by Mr. Kelly and are anything but rebuttal opinions.

Moreover, as the SEC demonstrated in its opening motion, Bell's opinions concerning purported delays in oil production and lost revenue from exporting and re-importing rigs are not relevant to any disputed issue, and are unreliable and prejudicial. (*See* Dkt. No. 135 at 24-25.) And, apart from the false claim that Bell's opinions are rebuttal to the SEC's industry expert, Ruehlen fails to explain the relevance of these opinions.

Ruehlen should therefore be precluded from offering any opinion testimony relating to paragraphs 22, 97-107, and 111-12 of Bell's report.

### CONCLUSION

For the foregoing reasons, and for the reasons in the SEC's opening brief, the SEC respectfully requests that the Court exclude the testimony of Alan Bell at trial.

Dated: May 16, 2014									Respectfully submitted,

<p style="margin-left: 50%">/s/ <i>Patrick M. Bryan</i><br>
PATRICK M. BRYAN<br>
D.C. Bar No. 490177<br>
S.D. Tex. ID No. 1572792<br>
ALFRED A. DAY<br>
MA Bar No. 654436<br>
SHARAN K.S. CUSTER<br>
D.C. Bar No. 464495<br>
NICOLAS A. BRADY<br>
DC 484612<br>
S.D. Tex. ID No. 27124<br>
Securities and Exchange Commission<br>
100 F Street, NE<br>
Washington, DC 20549-5949<br>
Telephone: (202) 551-4420<br>
Facsimile: (202) 772-9292<br><br>
<i>Counsel for Plaintiff SEC</i></p>

## **CERTIFICATE OF SERVICE**

I certify that on May 16, 2014, I electronically filed the foregoing SEC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINION TESTIMONY OF ALAN BELL with the Clerk of the Court for the Southern District of Texas, Houston Division, by using the CM/ECF system, which will send a notice of filing to all CM/ECF participants for this matter.


/s/  *Patrick M. Bryan*
Patrick M. Bryan